IRVING, J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Brenetta Hoskins Pittman and Ellis Pittman attempted to become legally married on October 4, 1999, via a civil marriage ceremony performed in Clarksdale, Mississippi by a justice court judge duly elected from Tallahatchie County, Missis *150 sippi. On September 28, 2001, Brenetta filed a complaint for divorce against Ellis. After Brenetta’s third amended complaint for divorce, which was filed on March 6, 2003, the matter proceeded to trial, and the chancellor found that the would-be marriage of Brenetta and Ellis was void because the marriage ceremony was performed by a justice court judge outside of the judge’s jurisdiction.
¶ 2. The chancellor held that Brenetta and Ellis had entered into a joint venture in 1987 which lasted until November 22, 2002. The chancellor also found that the parties held themselves out to be husband and wife, cohabiting together, on and off, and that the parties accumulated real and personal property. The chancellor equitably divided the assets accumulated during the joint venture which was the home that they shared while living together, the personal furnishings and property within the home, and fifty-three acres of rural land.
¶ 3. Prior to the trial on the merits, the parties agreed to sell the home which they shared. Pursuant to court order, the $26,000 in equity received from the sale was deposited into the registry of the court. Also, prior to trial, and after Bren-etta filed her seconded amended complaint for divorce, she and Ellis entered into the following agreement:
SETTLEMENT AGREEMENT BETWEEN
BRENETTA PITTMAN AND W. ELLIS PITTMAN

Re: Brenetta Hoskins Pittman v. W. Ellis Pittman

Cause No.: 01-121
Quitman County Chancery Court
This agreement has been reached by the above parties to resolve the above pending litigation after Brenetta Pittman notified her attorney Lee Graves that she wanted to dismiss the lawsuit ... The other purpose of this document is to give both Lee Graves and Ms. Linda Coleman [Ellis’s attorney] the major terms that Brenetta Pittman and W. Ellis Pittman have reach [sic] agreement regarding. [sic]
1. W. Ellis Pittman will pay child support to Brenetta Pittman in the amount of $400.00 per month based upon 18 percent of his adjusted gross income.
2. Brenetta Pittman and W. Ellis Pittman will have joint physical and legal custody of the children, Merissa S. Pittman and Marc A. Pittman with both children residing with Brenetta Pittman at her residence.
3. Brenetta Pittman will claim the children as tax exemptions during odd years and W. Wilis Pittman will claim the children as tax exemptions during even years.
4. Because both of the parties [sic] professional careers, they agree that W. Ellis Pittman will have liberal visitations with the children and that this will be in the best interest of the children.
5. W. Ellis Pittman will pay Brenetta Pittman a one time lump sum alimony payment of $5,000.00 upon the signing of this agreement.
6. Brenetta Pittman will quitclaim all interest that she have [sic] in the residence located at 187 Goodwin Road a/k/a known as [sic] the marital residence and the land located on Butch Hawkins Road to W. Ellis Pittman and he shall be responsible for all taxes, mortgages and repairs and agree to indemnify Brenetta Pittman from all debt associated with the properties.
*151 7. Brenetta Pittman agree and acknowledge that she have [sic] no interest in the law firm of W. Ellis Pittman and the building located at 315 Desoto Avenue.
8. Brenetta Pittman and W. Ellis Pittman agree that the marriage between the parties was void at the time the ceremony was performed.
While the agreement was signed by both Ellis and Brenetta, apparently a scrivener’s error resulted in the acknowledgments indicating that Brenetta twice acknowledged executing the agreement while Ellis did not. However, there is no dispute regarding Ellis’s execution of the agreement.
¶ 4. We have been unable to find in the record that the chancellor considered the effect of the agreement on the issues before him. While at one point the chancellor mentions the agreement, it does not appear that he ever ruled on the motion filed by Brenetta’s first attorney to terminate the agreement, or if such a ruling was made, we have been unable to locate the ruling in the record.[1]
¶ 5. Notwithstanding the agreement, the chancellor gave Brenetta the $26,000 from the sale of the would-be marital home. In awarding the $26,000 to Brenetta, the chancellor stated the following: “More in the nature of child support than a division of accumulated assets, the Court is of the opinion that the $26,000 equity should be awarded to her [Brenetta] for the purposes of obtaining transportation for she [sic] and the children.... ” The chancellor also awarded Brenetta one half interest in fifty-three acres of property which was jointly owned by the parties, and one half of the parties’ household furniture. The chancellor granted legal and physical custody of the parties’ two children to Brenet-ta, with Ellis having reasonable visitation rights.
¶ 6. Aggrieved, Ellis appeals, asserting the following issues which we list verbatim: (1) whether the valid, binding Settlement Agreement executed by the parties (and entered after the Petitioner-Appellee filed her Complaint for Divorce) where Petitioner-Appellee agreed, inter alia, to quitclaim her interests in the home and certain real property owned jointly by the parties estops any claims that she now has in the real property and home acquired during the time the parties cohabitated; (2) whether the Chancellor committed a reversible error of law by ordering Respondent-Appellant to pay to Petitioner-Appellee a sum of support (which had the appearance of palimony) for the sole purpose of permitting Petitioner-Appellee to purchase an automobile even after the Chancellor made a determination that the parties’ marriage was absolutely void; (3) whether the Chancellor committed a reversible error of law by ordering Respondent-Appellant to pay to Petitioner-Appel-lee $26,000 in lump sum child support for the purpose of her obtaining an “automobile;” (4) whether the Chancellor committed a reversible error of law in failing to adhere to the Farese Standards for ordering parental visitation to the minor chil *152 dren; (5) Whether the Petitioner-Appellee waived any right to the claim that she and Respondent-Appellee entered into a joint venture as that allegation was never made a part of her Third Amended Complaint; (6) Whether the Chancellor committed a reversible error of law by partitioning a sale of real estate property jointly held by the parties but failing to discount the amount paid to Petitioner-Appellee for real estate taxes and other obligations incurred and paid by Respondent-Appellant as joint ownership of the property.
¶ 7. Finding that the chancellor erred in not considering the agreement executed by the parties, we reverse and remand for a determination as to the validity of the agreement.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 8. While Ellis has listed six issues for consideration of appeal, we decline to address each of them because our decision that the case must be reversed makes some of the issues moot or premature. Therefore, we only address the settlement agreement, the award of child support, the visitation, and the failure of the chancellor to allow Ellis a credit or adjustment for improvements he allegedly made to jointly held property.

1. The Settlement Agreement

¶ 9. Ellis asserts that, before the final judgment was entered, the parties entered into a valid settlement agreement and that as a result of the agreement Brenetta received $5,000 and agreed to quit claim to him all of her interest in the home and other real property. Ellis maintains that the chancellor’s failure to bind Brenetta to the non-modifíable property settlement agreement, which she voluntarily signed, amounts to her being unjustly enriched by $5,000.[2] In support of this argument, Ellis cites Stone v. Stone, 385 So.2d 610, 612 (Miss.1980) for the proposition that courts may give deference to parties’ property settlement agreements, even if chancery court approval is not sought in the first instance.
¶ 10. A review of the record reveals that Ellis and Brenetta were joint owners, of some real property, consisting of fifty-three acres of land. The chancellor, failing to consider the settlement agreement in which Brenetta agreed to quit claim her interest in the home and other properties to Ellis, awarded a one-half interest to Brenetta and a one-half interest to Ellis. However, the law in this state provides that a property settlement agreement is no different from any other contract. In re Estate of Hodges, 807 So.2d 438, 445 (Miss.2002). The Mississippi Supreme Court has stated that property settlements under divorce actions are binding on the parties if fair, equitable and supported by consideration. Weeks, 403 So.2d at 149 (citing Stone v. Stone, 385 So.2d 610 (Miss.1980)). We see no reason why the principle should be any different in a case where the agreement is executed by parties seeking to settle issues arising out of a would-be marriage which turns out to be void ab initio. It seems to us that the chancellor should have determined whether there was any justifiable basis for not enforcing the agreement, or parts of it, notwithstanding the court’s determination that the marriage was void. Therefore, we reverse and remand this case for a determination of the validity of the settlement agreement.

2. Child Support

¶ 11. The chancellor awarded Brenetta $800 per month in child support. *153 Additionally, the chancellor awarded Bren-etta $26,000 and stated that this was “[m]ore in the nature of child support than a division of accumulated assets.” In effect, the chancellor made an initial lump sum award of child support. We know of no authority permitting an initial lump sum award of child support, and Brenetta has not cited us to any such authority, contending only that there is substantial to support the chancellor’s decision. Ellis directs us to N. Shelton Hand, Mississippi DivoRce, Alimony & Child Custody § 10-9 at 319 (6th ed.) for the proposition that child support should never be awarded in lump sum. We agree. Consequently, we reverse and remand the lump sum award of child support.
¶ 12. However, as to the monthly child support award, it does not appear that Ellis, based on his brief, is challenging the appropriateness of this award. Even if he were, we note that the child support provision in the “so-called separation agreement” is perhaps presumptively inadequate inasmuch as it does not comply with the statutory child support guidelines set forth in Mississippi Code Annotate section 41-19-101 (Rev.2004). Therefore, we find no fault with the amount of the monthly child support award. However, we are concerned that the chancellor failed to address the effect of the void marriage on the paternity of the children and Ellis’s obligation to pay child support where the children neither born during, or legitimated as a result of, a valid marriage.[3] On remand, the chancellor should consider whether an order adjudicating paternity is necessary since the effect of the adjudication that the marriage is void is to declare that the children were born under circumstances which rob them of their legally recognized status as Ellis’s children.
¶ 13. Ellis next argues that the chancellor erred in failing to grant him certain periods of visitation, such as New Year’s Day, Easter, Memorial Day, the Fourth of July, Labor Day and summer visitation. The record does not contain any evidence that Ellis ever raised this issue to the trial court. Therefore, this issue is procedurally barred. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992). However, our ruling here does not in any way preclude Ellis from petitioning the trial court to amend the visitation schedule or the chancellor, if he chooses to, may reconsider the visitation on remand.
¶ 14. The next argument that we consider is Ellis’s contention that Brenetta waived her claim to assert that she and he entered into a joint venture because the allegation was never made a part of her third amended complaint. The record reflects that Brenetta did in fact raise the allegation of joint venture in her third amended complaint. Brenetta’s third amended complaint states in pertinent part:
Since October 4, 1999, the aforesaid parties held themselves out to be husband and wife, buying real and personal property together, incurring debts together, jointly owning, buying and selling real and personal property, owning a joint venture and other businesses, including, but not limited to, a law office.
Brenetta’s third amended complaint also contains the following statement:
In the event the court should find the marriage to be void, then, in the alternative, the adult plaintiff would most re *154 spectfully show that an implied or constructive trust was established by and between the adult plaintiff and the defendant, and the adult plaintiff hereby requests the court to order that the adult plaintiff be fully compensated for her benefit and the benefit of the minor children of the parties.
Finally, the third amended complaint contains the following prayer: “And if plaintiff Brenetta Hoskins Pittman has prayed for wrong, improper or insufficient relief, then she now prays for such relief as to which she may be entitled in equity and/or the law.” Based on these pleadings, we are satisfied that the chancellor was within his authority in treating the parties’ relationship as a joint venture.

3. Credit or Adjustment for Improvements Made by Ellis to Jointly Owned Property

¶ 15. Lastly, Ellis contends that he is entitled to a contribution from Bren-etta for the $30,000 that he expended in making improvements to the would-be martial home. Ellis maintains that the home had a low resale value prior to the improvements that he made and that the improvements made the martial home more marketable. We first note that the record does not contain any evidence that Ellis ever brought this issue before the trial court. Therefore, he is procedurally barred from raising this issue for the first time on appeal. Crowe, 603 So.2d at 305. However, since we are reversing this case for the chancellor to consider the validity of the settlement agreement, this issue could become moot. Should it not become moot, the chancellor shall not be precluded from addressing it as a part of the equitable division of the jointly acquired property-
CONCLUSION
¶ 16. In summary, we reverse and remand this case for the chancellor to determine the validity of the settlement agreement which the parties signed, particularly the provisions relating to the settlement of the jointly held property. We have already commented in this opinion on the provision regarding child support. However, the chancellor is free to reconsider the amount of child support as he determines appropriate when he considers the paternity issues.
¶ 17. While we do not believe, based on Ellis’s admissions, that there is any genuine factual issue regarding the paternity of the minor children, there needs to be order adjudicating Ellis the father of the two minor children if this has not already been done. The final decree simply recited that “Brenetta Hoskins Pittman and W. Ellis Pittman are the parents of two children, namely Merissa Shanetta Pittman, a female, born December 19, 1991, and Marc Anthony Pittman, a male born May 15, 2001.” Perhaps there is an order of paternity already in existence with respect to the child that was born prior to the purported marriage, and if so, nothing further needs to be done with respect to that child.
¶ 18. We reverse and remand for further proceedings consistent with this opinion.
¶ 19. THE JUDGMENT OF THE QUITMAN COUNTY CHANCERY COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS AND BARNES JJ., CONCUR. CHANDLER, GRIFFIS, AND ISHEE, JJ., NOT PARTICIPATING.

. In his bench ruling, the chancellor referenced the settlement agreement with the following comment:
I know of no significant interest to recite why previous counsel do [sic] not continue to be counsel of record other than on behalf of the plaintiff. It was a mutual decision at the insistence of the plaintiff that the then present counsel be relieved, as was then argued at said motion hearing. His principal interest and concern was for the best interest and the benefit of the children. Success of counsel for plaintiff requesting to be relieved upon the plaintiff and the defendant entering into what they called a separation agreement to which then counsel, in his opinion, could not, in good conscious, agree with.

. The characterization of the agreement as a non-modifiable property settlement agreement is Ellis’s characterization of it, not the Court's.

. Admittedly, the first child was born before the purported marriage; however, under the provisions of Mississippi Code Annotated section 93-17-1 (Rev.2004), the first child would have become legitimate if the marriage had not been void, because Ellis has acknowledged that he is the father of that child.